The next argued case is number 20-1305, Monk v. Wilkie. Ms. Needham, please proceed. Good morning, Your Honors. Madison Needham, law student intern, appearing on behalf of Appellant. Before I begin, I would first like to acknowledge Mr. Monk, who is on the line today. Mr. Dolphin is beginning his seventh year of waiting on the VA to decide his claim. That is too long under any legal standard. Martin directed the CABC to make it possible for veterans to challenge VA delay under track. Let's be clear about what is still being delayed. There have been over this period a number of decisions. Is that right? What is left to be decided? Mr. Dolphin's TDIU effective date determination is still sitting before the board. That concerns at what point he should have started receiving TDIU benefits, and it totals to about $60,000 in a retroactive payment, which has not been decided. That is the remaining issue, is that correct? That is the remaining issue for Mr. Dolphin, yes. And Mr. Dolphin did receive a board decision earlier this year, at the beginning of the year, correct? Mr. Dolphin received a partial decision on some of his appealed benefits, but I will direct this court's attention to its recent decision in Moat, where it was stated that a remand, which is not a complete decision, is not enough to end the inquiry of delay. Mr. Dolphin received a remand on several of his claims, which have since been decided, but others remain undecided at the RO level. I'm confused. Are you saying the board didn't do anything on any of the merits in the Dolphin case at the beginning of the year? At the beginning of the year, the board made an adjudication on some of Mr. Dolphin's claims and remanded others, but as Moat recognized, a remand is not a decision. Right, but a decision is a decision, right? I mean, you're saying it remanded on some things, but it actually addressed on the merits some other things. I mean, this was a really complicated case, and I just want to make clear that it did issue a decision on the merits of some of the issues before it. Is that fair to say? Mr. Dolphin received a resolution on some of the claims that were before the board, but it still amounted to ultimately $60,000 that he has now been waiting more than six years to receive. He was entitled to a proper and full decision on his benefits when he appealed them in 2014, when he went to the board and he said, here are, you know, I've been hurt, I'm in need of assistance, here's my information. I thought you told us the only remaining question was the effective date and that the benefits have all been resolved, as I understand it, in Mr. Dolphin's favor. The only question is whether the effective date that was selected by the board is correct or whether it should be earlier. Is that correct or not? The effective date issue for the TDIU claim is still before the board for Mr. Dolphin, but I would like to demonstrate that even if all of Mr. Dolphin's claims were resolved tomorrow The question is, were they all resolved? We heard from the government that they were all resolved. Is that correct or not? That all of the claims except for the TDIU effective date were resolved? No. Mr. Dolphin had a remand on the determination for other service connection injuries, I believe including an injury to his knee and his arm from the board. Counsel, why do we have a final judgment here if there's still an unresolved claim? On the TDIU determination? Yes. It is unclear why the TDIU determination was not included in the board's decision earlier this year. Whatever the reason is, if there's an unresolved claim, we don't have a final judgment and why do we have jurisdiction? What we are appealing here is we're talking about the CAVC's interpretation of track to Mr. Dolphin's total delay. So a delay claim becomes ripe and we have that kind of final decision, final agency action when it simply becomes too long. Otherwise, you couldn't possibly challenge delay in court. So what we're saying here is the CAVC did not properly interpret track in order to assess that long period of delay that it took for Mr. Dolphin to properly get his full decision as well as the other appellants. And I would like to point out that the CAVC made three principal legal errors in its interpretation of track. First, it recreated Costanza's rejected refusal to act test because it required Mr. Dolphin to demonstrate that there was no action whatsoever on the part of the VA when truly track concerns the total length of delay, not whether the agency has taken any action. Moving through a case and, you know, resolving, taking some steps which they're statutorily required to take does not actually mean that they are necessarily going to resolve it in a timely manner of time, which is what track is supposed to assess. Second, the CAVC... Now, counsel, the appeal with respect to Hudson, Obey, and Monk are moved. Is that correct? Mr. Hudson and Mr. Monk actually still... They have claims currently pending before the board under this court's recent decision in moat. Mr. Hudson received a remand for further fact adjudication, which is now again before the board. But even if all of the appellant's claims were resolved, we stand on our arguments in our briefing that the exceptions to mootness apply and that this court would be empowered to review the CAVC's interpretation of track so that... So we have to decide the mootness issue? The government has conceded mootness as to Mr. Dolphin's claim, and we contend that the mootness factors still apply to those who have had their decisions fully resolved. I thought that you as the appellant agreed that the only remaining claim of this group was that of Mr. Dolphin and that none of the others were before us. Isn't that what you have been telling us? We would like to... Because the government has conceded mootness in Mr. Dolphin's case, we would like to focus on that aspect of the case. You say the government has conceded mootness in Dolphin. I thought Dolphin was the only live claim. The others received benefits, right? Allow me to refer to the record shortly to explain, Your Honor, one moment. Mr. Hudson, for instance, had his case recertified again to the BVA this August, and that was the result of a remand from the board. And so in moot, again, we said a remand is not a decision, and so he was remanded down to the RO, appealed back up to the board level, which would mean that he would still have a pending claim. But that's not before us, right? That hasn't gotten to the stage of appeal to this court. Is that correct? I will leave that for rebuttal, Your Honor. I see that I only have a minute remaining, and I apologize. The question is, is that correct? One moment, Your Honor. We represent all of the appellants in this case, and all of the appellants in this case are before you. If you do not accept that they have a live claim, then we stand on the exceptions to mootness outlined in our briefing. But what is really important to note that this is a case about delay and about mandamus. We are not asking you to review the individual factual decisions or the determinations of each appellant. Rather, what we ask you to recognize is that six years that Mr. Dolphin has waited and the incredible amount of delay that the appellants have suffered is simply too long, and that the CAVC, by misinterpreting track,  who have declined to participate in the new system that was enacted by Congress and that are staying under the so-called legacy system, and we're really trying to understand what's left based on that choice, based on your telling us in your brief that the issues are moot and have been resolved as to everyone but Mr. Dolphin. We have the government's response, and we'll ask them agreeing that there is a single remaining issue. And I thought this was quite clear from your briefing that that was what was being presented before us. It doesn't quite fit what you're now telling us. I would like to answer your point about the AMA. These are veterans in the legacy appeal system, and while they may have at certain points been offered the opportunity to opt into the AMA, there is no obligation for a veteran to give up their place in line and engage in an untested system in order to have their appeals adjudicated in a timely fashion. The secretary has the burden to decide these claims in a timely fashion, and the CAVC has the burden to compel action of the secretary unreasonably delayed. What we present to you here is a case in which the CAVC misinterpreted the track factors. And we have at least, we will give you Mr. Dolphin's case. That is something you can decide here today. I would like to reserve the rest of my time for rebuttal. Thank you. All right, we'll hear from the government. Mr. Pelkey.  Good morning, and may it please the Court. I'll begin with a brief discussion of the individual appellant's situation right now to try to resolve that a little bit for the Court's benefit. Well, do you agree with the government's position that all of the appellants are now before us for review? No. We take the position that Mr. Monk, Mr. Hudson, and Ms. Obey, that their claims are moot. As Your Honor noted, the reply brief from appellants focuses a great deal now in terms of the track factors on Mr. Dolphin's claim because we did concede in our 28-day response letter that the TVIU effective date issue under Harper leaves that issue live for his appeal. But with Mr. Monk, it's important to note, and I'll just run through these quickly. He received a Board decision that denied him relief. He appealed it, and it was remanded from CAF-C, and that's through the system now. Mr. Hudson went before the Board. The first line of the Board's decision is new evidence was submitted. The evidence was reviewed by the Board, and based on that evidence, it remanded for further adjudication on TVIU because now there was evidence presented of unemployability as well as a benefit claim related to hypertension, and so directed the regional office to take up those issues and provide very specific directions on what needed to be done and what sort of findings needed to be made. Ms. Obey received what she was looking for, which was dependent benefits. She's now pursuing other unrelated benefits within the system. So for each of those three appellants, they received what they're complaining about or what they want the court to order VA to do, which is a decision, order the Board to do. They got a decision. The fact that some of them are remands, I don't think the analogy of moat works at all here because when you look at the cases that are remanded, which would be specifically Hudson, Monk's remand was from CAF-C. It wasn't from the Board. Mr. Hudson's case is based on new evidence and a remand to develop the issues that the Board acknowledged were brought up there. And that's one of the things running through this case here that I don't think appellants ever deal with well in their briefing is that we're dealing with an open system here. This court's jurisprudence documents very well both the problems with the legacy system, which are well known and have been discussed in many contexts and are talked about very frankly in our brief, and also the features of that system that tend to inform those problems in terms of delay, the open system, the opportunity to present new evidence, the fact that claims can move up and down the ladder as evidence brings up new issues that need to be reviewed, more medical exams need to be taken. And when you look at Mr. Dolphin's case in particular, you can see that writ large. The 17 individual issues that the claim has moved up and down through the various mechanisms that are to the veteran's benefit within the legacy system to make sure that everything's adjudicated, that where medical exams need to be done, they are done. His record indicates numerous. At one point, I think it was 10 medical exams scheduled in a certain time period. And the result of that is you move through the timeline. They speak in their reply brief. They always try to cut it down to five years, five years. But that's the delay, and that's what's unreasonable here. And when you look at Mr. Dolphin, and I think this was alluded to in some of your honors statements during Appellant's initial argument, there's activity throughout those years, and that's not just activity, sort of ministerial activity, moving the thing along. It's activity that's resulting in benefits, right? Along the way, Mr. Dolphin is receiving disability benefits. It goes from 90% for six disabilities in 2014 and moves up to 100% with SMC in 2015. More exams are scheduled. He gets more rating decisions for other individual benefits. He gets TDIU granted in 2018. And so what's going on now in his claim is there are other disabilities that he's raised. Those are being developed. He's already on 100% with SMC, but he wants higher individual ratings for certain disabilities and the effective date of the TDIU, and Appellant's counsel described that. So I think, you know, on this question, it's two points. Mr. Dolphin is the only claimant whose claim is not moved because of the way Harper treats TDIU, and we do concede that. But when you then move to the analysis of the extraordinary relief of mandamus and you look at the facts of Mr. Dolphin's claim and run those through the appropriate analysis, the track factors, the Court of Appeals for Veterans Claims, its application of the facts to those standards, those legal standards, was exemplary. It balanced. It looked at the issues from Mr. Dolphin's perspective, the delay. It used its expertise, meaning the court's expertise with the veteran's system, to describe and apply to this balancing review the specific components of the veteran's system. Important within that system, and I think it comes up if the court starts to consider the effect of remand on some of these other appellants like Mr. Hudson, but also Mr. Dolphin. You know, remand moves, you're not, to say that these claimants are in the same system because they've been remanded is not correct. They are in a different iteration now of the legacy. They're not still within the legacy system that brought about their delay claim as they describe it because once remanded under the regulations, they effectively move up in line. There are specific things designed to expedite the adjudication process and development of evidence, and they retain their position on the docket, which by necessity, since they were already at the front of the line, moves them up in line to get a decision. And we can see that actually with Mr. Hudson because his remanded claim now, my understanding is already the statement of the case is done and it's back before the board. Counselor Pelkey? Yes. I'm sorry, Judge Lurie, go ahead. Thank you, Judge Chen. Mr. Pelkey, what do you want us to do here? Do you want us to affirm the denial of mandamus with respect to three people for reasons of mootness and then with respect to the fourth, Mr. Dolphin, by getting into the merits and determining that the delays were not unreasonable? Essentially, what would you like us to do? Well, Your Honor, first, we would like the court to consider its jurisdiction here, given that we've taken a position in this case law in the circuit about this, that the legal standards here are properly stated. This isn't like Martin where there was a dispute between Costanza and whether or not it should be applied and then ultimately deciding on track. The mootness standard is well known. There's cases we saw in our brief where if you're just looking at how the Court of Appeals for Veterans Claims applied the facts of the mootness standards, that's not something that falls within this court's hand, but jurisdictionally speaking. So we think the court should take a hard look at whether or not there are, in fact, non-frivolous legal issues raised. Well, you've agreed, at least as far as Mr. Dolphin is concerned, that there's an outstanding issue. So let's use your few moments to really get to the heart of Judge Rurie's question  Mr. Dolphin has been in the system for a long time. There is at least this one remaining question of effective date. Where does that leave us in terms of this request for mandamus? Yes, Your Honor, thank you. And Mr. Dolphin, I would say that the court is clearly the individual closest to moving forward jurisdictionally. And if the court reaches a conclusion, first, I won't waste time on going through all the reasons why we think mandamus does not apply to Mr. Dolphin, because the question is directed at what should this court do. I think that the court's jurisprudence on mandamus discusses how this mandamus is something within a court's discretion. And we're talking about the Court of Appeals for Veterans Claims discretion. How does it want to frame the relief? Well, tell us how you say it doesn't apply. I'm sorry, Your Honor, how which doesn't apply? You said that mandamus doesn't apply to Mr. Dolphin. This reaches us in a mandamus question. And you phrased your response in saying that, well, mandamus doesn't apply. That's the question before us, is it not? Oh, no, I'm sorry, Your Honor. If I misspoke, I was not trying to argue that mandamus doesn't apply. It's simply that what I'm not going to spend time in is our analysis of why the track factors, at least in this response to this question, why the track factors were properly reviewed and the facts were properly applied to by the Court of Appeals for Veterans Claims to Mr. Dolphin's request for mandamus. And so should I, or should a firm Court of Appeals for Veterans Claims decision that he has not met, Mr. Dolphin has not met his burden to establish a basis for mandamus, I was going to address what the Court should do if it thinks that he has met the track factors, and then what manner of relief should it fashion. If that, I may have misheard the question. No, no, that's really, that's the ultimate question before us. We'd be very interested in your answer. Sure, certainly, Your Honor. I think that, as I was saying, the Court has in the past discussed the need to be circumspect and remand things to the Court of Appeals for Veterans Claims with instruction to decide what the appropriate relief is. And when you look at the general mandamus factors under Cheney, the Court has to convince itself that it's appropriate and look at what's the appropriate relief. And in Martin, this Court emphasized that the expertise of the Court of Appeals for Veterans Claims on these issues is a significant consideration of mandamus questions. So a remand to the Court of Appeals for Veterans Claims to fashion the type of relief that's most appropriate based on the facts of Mr. Dalton's claim, which is that he is very far along in a process with a lot of evidence, and there hasn't been much time, frankly, since he's entered this last stage. But isn't the real question, excepting for the moment, that the ultimate remaining question is the effective date for the final resolution in favor of Mr. Dalton of his various disabilities? He obviously has some very significant issues of disability. So what's needed to cut through all of the noise is what is the proper effective date? Now, we have a decision of the Board, which he says is an error. Now, is there any way of expediting the substantive review of this remaining question? Exactly, Your Honor. And as I was trying to lay out, I think that that's a question ultimately for the Court of Appeals for Veterans Claims, that the remand from this Court would be we find there's a basis for mandamus on the question of the effective date of the TDIU. Well, I guess one question is what is the current status of that pending matter in front of the Board right now? You're representing the VA. Can you give us any information about what's the current status of the effective date of the TDIU claim for Mr. Dalton in front of the Board? Unfortunately, Your Honor, because of the way it came up and it wasn't discussed in the opinion, as you know from the 28-J letters, all parties missed this Harper issue that was there. So there's not a document within the record, and talking to the VA, there's nothing specific that we know of going on with the TDIU effective date. It's part of what is proceeding, but in terms of specific action to it and being able to speculate as a timetable, I simply can't do that sitting here right now. Is it your best guess that there were a number of issues in front of the Board, and is it your best guess that this particular one was just overlooked by the Board? You know, Judge Chen, in all honesty, I think that that might be the case. I think that this issue that was caught by all counsel late, I think that because TDIU had been awarded in 2018, I'll finish my response, Your Honor, quickly. Please do. Because TDIU had been granted, I think that it's very possible that the Board did not catch this issue that the effective date would stay with the claim.  Is that conceivable when the issue has been raised now to the Veterans Court, and it's now the focus of this appeal to the Federal Circuit, and you say still nobody seems to know that they didn't decide the effective date? Well, Your Honor, in all honesty, I have to say that many things are conceivable within this complicated system, and I just don't know the answer. And as I was going to say, I think that Well, maybe they're entitled to mandamus in that case. Or entitled to a directive that the basis for mandamus hasn't been made, but efforts should be made or steps should be taken to ensure that the Board is aware of this separate effective date issue if it's not already, something along those lines. I still don't think that the grounds for mandamus is there. This is a very recent development, and frankly, we don't know, and I don't know sitting here what exactly its position is in the Board's mind and awareness. Is this something that would benefit from further review and communication with the Court as to where that stands? Well, Your Honor, what I can tell the Court now is I will speak with VA after the argument and say, you know, let's make sure that this is on the Board's radar and raise it and let them know that there was this Harper issue and that TDIU effective date is active so that there's no question that it's for the Board. And we can certainly notify the Court once we get a letter. As I recall, when the AMA was enacted, the statute includes a requirement for not only expeditious response but regular reports to the Congress as well. And with the hiring of, I gather, several thousands, many thousands of people by the VA to process the claims and to catch up on the legacy, that it does seem rather strange, and this isn't an impression that I particularly gathered from the briefs, but if Mr. Dolphin's particular issue has now been the focus of the Court of Appeals for Veterans Claims and now the Federal Circuit, and it still isn't getting any attention from the VA, there are gaps here that I think would benefit from investigation. Yes, right. Well, this claim was not proceeding within the AMA. And again, I can only emphasize that I just don't know what the status of the claim is within the confined space of the Board. Because the VA, as I understand it, told the Congress that they were giving the legacy cases expedited attention as well. Correct. When you look at the statistics that are being reported, it includes not only the AMA cases but also breaks out the legacy cases and how those are being worked through, how the time of decision is working or remaining, because those numbers are going down fairly quickly in terms of the numbers that are remaining in the legacy system. Okay. Anything else you need to tell us? No, thank you, Your Honor. We would simply conclude by asking that the Court affirm the decision of the Court of Appeals for Veterans Claims. Okay. Does the panel have any questions for Mr. Dolphin at this stage? No. Okay. In that case, we will hear rebuttal from Ms. Nooner. Thank you, Your Honors, and may it please the Court. To answer the questions as to what petitioners are currently live before this tribunal, Mr. Dolphin indisputably has a live petition for Mann-Thomas. He has the TDIU effective date that remains undecided after six years. That hasn't been an issue until he received the positive decision on the claim. Isn't that right? And then the question as to when the various formalities were met for effective date. Is that correct? You're telling us that the effective date issue is also six years old? Respectfully, yes, Your Honor. The TDIU has been part of his petition, and therefore the correct effective date is an integral part of his petition and appeal. So this is part and parcel of Mr. Dolphin's appeal, starting back with the NOD, which was filed literally six years ago, October 31 of 2014. Now, if I may, I'll just outline the overview, and then we can dip into this. The overview is that Mr. Dolphin has a live case, and the other three petitioners, Ms. Obey, Mr. Monk, and Mr. Hudson, have received decisions and have made claims, that are still part of this briefing, that they fit the exceptions to mootness. And our legal argument is that the Veterans Court misconstrued the track factors for Mr. Dolphin. That's the legal issue that needs to be decided. They failed to decide his constitutional claim, over which you have complete de novo review on law and facts. And they misconstrued the mootness exceptions for the three other petitioners, as to which you also have the legal capacity to review. We ourselves are focused on Mr. Dolphin, because the Veterans Organization Administration concedes that his petition is not moot. And Judge Lori, that is what my co-counsel was saying. The Veterans Administration concedes that Mr. Dolphin has a live petition, which means we should be looking at the mandamus factors and the track factors, and how they interact. And under the mandamus factors, the three training factors, we believe that there is no other relief but to come to this court at this point, and ask you to order that the decision be rendered for him in a timely manner. As you have all just discovered with your colloquy with Mr. Pelkey, and I commend him for his candor, there is no idea as to when Mr. Dolphin is going to get an actual decision on the remaining benefits question. After six years, that's a shame, and beyond that, it's unconstitutional and statutorily unreasonable. We now hear that they may have overlooked the issue. Well, they need to fix that pronto. That should be a mandamus to fix Mr. Dolphin's TDIU benefit within the next 30 days. They've already conceded his effective date is November 9, 2009. So we've already established through the Veterans Organization that the man is entitled to these benefits going back to November 2009, but yet he's sitting here in November having received a decision in February that was totally mystifying as to whether all of his different claims were being considered, and it took sleuthing work by Yale Law School to figure out that the man was shortchanged by $60,000. If he didn't have counsel, this never would have come to light, and it's wrong for the Veterans Administration not to say, you know what? Since Martin, there's only been one mandamus petition granted. That was Godsey, and it was a subunit of the appeals process, as you know, through a class action. But if anyone in the whole system has a bona fide right to a mandamus petition at this point in time, it is Mr. Dolphin. And they should truly just say, we have failed him. The system is broken. They admit that. Again, I commend Mr. Pelsey for that straightforward admission. But we're here now. I see my time is coming to a close. I'll finish up briefly. We're here now because the VA has admitted that Mr. Dolphin still has not received the full decision, meaning the grant or denial of benefits. We know it's a grant of benefits. I urge you, I urge you to issue the decision saying that Mr. Dolphin is entitled to a mandamus that six years is too long for him to get a final decision on the benefits he is owed as a result of his service to this country. Thank you. Does the panel have any questions? No. No. Okay. We thank all three counsel. The case is taken under submission.